**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANDREA HELLER,

    Plaintiff,

v.                                                       Case No. 3:13-cv-1494-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of the United
States Social Security Administration,

    Defendant.
_____/

## **OPINION AND ORDER** [1]

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Upon review of the Transcript of Administrative Proceedings (Doc. No. 9; "Tr."), filed March 10, 2014, including a transcript of the proceedings before the Administrative Law Judge ("ALJ") and the ALJ's Decision, in addition to a review of the pleadings and memoranda submitted by the parties in this case, for the reasons set forth herein, the Commissioner's decision in this case is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed March 10, 2014; Reference Order (Doc. No. 12), entered March 11, 2014.

## I. Background

Plaintiff filed for DIB and SSI on January 19, 2011, alleging an onset of disability on July 7, 2010. Tr. at 135-42, 160-63.[1] Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and received a hearing, which was held on August 21, 2012 before ALJ Robert Droker (the "Hearing"). Tr. at 30. In a decision dated September 6, 2012 (the "Decision"), the ALJ found Plaintiff not disabled as defined under the Act. Tr. at 10-24. Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

---

[1] The filing dates and Plaintiff's alleged disability onset date on the applications are different on each application. The ALJ and the parties refer to the filing date of both applications as being January 19, 2011 and Plaintiff's alleged disability onset date as being July 10, 2010. The discrepancies in the dates is immaterial.

- 2 -

In his Decision, the ALJ performed the required five-step sequential analysis. Tr. at 10-24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. at 12. At step two, the ALJ determined that Plaintiff suffered from the severe impairments of schizoaffective disorder, obesity, and affective disorder. Tr. at 12. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 12-15. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. Tr. at 15-21. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. at 22. At step five, based in part on the testimony of a vocational expert ("VE") at the Hearing, the ALJ determined that Plaintiff was able to perform the requirements of representative occupations such as a table worker, warehouse checker, and night cleaner. Tr. at 22-23. Based on his finding at step five, the ALJ concluded that Plaintiff was not disabled. Tr. at 23.

### III.  Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g). Further, when the

Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1533, 1560 (11th Cir. 1995); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

Plaintiff challenges the ALJ's Decision on four grounds:

1) The preponderance of the evidence supported a finding that Plaintiff was disabled;

2) The ALJ erred by finding that Dr. Solloway's medical opinions and findings were entitled to little weight;

3) The ALJ erred by failing to include in his RFC assessment and hypothetical question to the VE any deficiencies in Plaintiff's ability to concentrate; and

4) The ALJ failed to properly consider the side effects of Plaintiff's medications.

See generally Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 14; "Pl.'s Mem."), filed May 12, 2014. On June 20, 2014, Defendant

filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15) responding to Plaintiff's arguments.  For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

### A. The ALJ's Evaluation of the Medical Evidence on Record[2]

First, Plaintiff argues that the "preponderance of the evidence supports a finding that [Plaintiff] was disabled." Pl.'s Mem. at 9.  Specifically, Plaintiff contends that "[a]ll of [the] evidence supported a finding that she could not sustain any work on a regular and competitive basis," and the ALJ's Decision was "not supported by substantial evidence." Id. at 9-10.  Generally, a plaintiff has the burden of providing the medical and other evidence about her impairments for the ALJ to use in reaching his conclusions.  20 C.F.R. § 416.912(a).  An ALJ must "consider all evidence in [the claimant's] case record when [making] a determination or decision whether [the claimant is] disabled." 20 C.F.R. § 416.920(a)(3).  To that end, an ALJ may not pick and choose which evidence he considers in making the disability determination.  See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).  In addition, an ALJ is required to "state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision…." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  Instead, "the ALJ must state with some measure of clarity the grounds for his decision." Winschel, 631 F.3d at 1179-80.

---

[2]   For the sake of brevity, the Court addresses Plaintiff's first two arguments together in the first section of its discussion.

### 1.	The ALJ's Credibility Finding

At the outset, the Court notes that since this was a case involving mostly non-exertional and subjective symptoms related to Plaintiff's mental impairments, the ALJ's evaluation of Plaintiff's credibility was critical in determining the severity of Plaintiff's functional limitations and assessing the various medical opinions on record.  In his Decision, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her subjective symptoms were not credible to the extent they were inconsistent with his RFC assessment.  Tr. at 17.  While Plaintiff has not directly challenged the ALJ's general credibility finding, the Court nevertheless finds that it was based on substantial evidence on record.  In support of this finding, the ALJ noted numerous inconsistencies between the severity of Plaintiff's symptoms as alleged and evidence demonstrating Plaintiff's actual functionality.  For instance, despite claiming total disability as a result of her mental impairments, Plaintiff testified and her mother and sister noted in written reports submitted on Plaintiff's behalf that Plaintiff was "able to do a wide range of activities of daily living (ADLs) compatible with competitive work," including "housework, driving, shopping, and social activities consisting of her swimming at her sister's pool and having coffee with friends."  Tr. at 17.  In addition, the ALJ noted that Plaintiff looked for other work and received unemployment benefits during the relevant period, which indicated both a willingness and ability to perform competitive work despite her alleged disabling symptoms.  Tr. at 17. Thus, to the extent that the various medical opinions were founded upon Plaintiff's subjective statements, the ALJ was entitled to discount these opinions accordingly.

### 2.     Dr. Michael L. Solloway, M.D.

Plaintiff first contends that the ALJ improperly assessed the opinions of Michael L. Solloway, M.D., who conducted a one-time Independent Medical Evaluation on April 26, 2012. Tr. at 520-23. The bulk of Dr. Solloway's report consists of a history of Plaintiff's psychological problems as told by Plaintiff. Tr. at 520-22. There is no evidence that Dr. Solloway conducted any standardized psychological testing of Plaintiff to assess her functional impairments during this evaluation. Nevertheless, Dr. Solloway opined that Plaintiff suffered from schizoaffective disorder and assigned her a Global Assessment of Functioning ("GAF") score of 40. Tr. at 522. Dr. Solloway also found that Plaintiff was "totally and permanently disabled for any type of gainful employment," which he stated was based on the "difficulties that [Plaintiff] has in communicating with other people … and her inability to stay concentrated and to be logical…." Tr. at 523.

In his Decision, the ALJ assigned "little weight" to Dr. Solloway's report and opinion that Plaintiff was disabled because "his examination was a onetime event, he did not base his findings on objective testing or reference[ Plaintiff's] treating physician's records indicating that she had a high GAF score of 65." Tr. at 21. After reviewing the record, the Court finds that the ALJ's evaluation of Dr. Solloway's report was based on substantial evidence. As the ALJ correctly noted, Dr. Solloway's opinions were inconsistent with other contemporaneous treatment records from Sutton Place Behavioral Health, which identified much milder functional impairments upon examination of Plaintiff, including GAF scores of 65. See Tr. at 506-14. In addition, there is no indication that Dr. Solloway performed any objective testing to evaluate Plaintiff's symptoms. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source

presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"). Finally, with regard to Dr. Solloway's opinion that Plaintiff was "totally and permanently disabled for any type of gainful employment," the ALJ was entitled to afford this opinion "little weight" as it concerned a legal determination reserved to the Commissioner. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"), (d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section").

Plaintiff argues that Dr. Solloway's medical opinions "were not contradicted by any other physician who examined and/or treated [Plaintiff]." Pl.'s Mem. at 13. The Social Security Regulations state that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Thus, the only "medical opinions" issued by Dr. Solloway were that Plaintiff suffered from schizoaffective disorder, had a GAF score of 40, and was unable to work due to her mental impairments. Id.

With regard to Dr. Solloway's diagnosis of schizoaffective disorder, the ALJ found this impairment severe at step two of his Decision. Tr. at 12. However, this diagnosis alone says nothing about the functional impact of Plaintiff's schizoaffective disorder. McCruter, 791 F.2d at 1547 ("The severity of a medically ascertained impairment must

be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality"). The ALJ also found that Dr. Solloway's GAF score of 40, which denoted extreme functional impairments, was contradicted by Plaintiff's treating sources, who assigned less restrictive GAF scores denoting only mild to moderate functional impairments. See Tr. at 19, 20, 21; see also Tr. at 396 (assigning a GAF score of 50 to 55), 441 (assigning a GAF score of 55), 448 (assigning a GAF score of 50), 453 (assigning a GAF score of 55), 464 (assigning a GAF score of 55), 467 (assigning a GAF score of 65), 470 (assigning a GAF score of 65), 477 (assigning a GAF score of 60), 508 (assigning a GAF score of 65), 512 (assigning a GAF score of 65). In support of his GAF score of 40, Dr. Solloway opined that Plaintiff had "severely impaired social functioning, severely impaired occupational functioning," and "some impairment in reality testing and communication…." Tr. at 523. However, there is little evidence that Plaintiff's social or occupational deficiencies were severe enough to prevent Plaintiff from performing any work of any kind, as was described by Dr. Solloway. To the contrary, a review of the medical record reveals numerous observations of relatively normal speech and communication. See Tr. at 395 (noting normal speech and pleasant and cooperative behavior), 426 (noting that speech was clear and precise), 462-63 (noting normal speech, a cooperative social presentation, and appropriate affect), 466-67 (noting normal speech, a cooperative attitude, good attention span, intact thought processes, and no hallucinations), 469-70 (noting normal speech, a cooperative attitude, good attention span, intact thought processes, and no hallucinations), 476 (noting normal speech, appropriate appearance, a cooperative attitude, and intact thought processes),

483 (noting normal speech), 507-08 (noting normal speech, a cooperative attitude, good or fair[3] attention span, intact thought processes, and no hallucinations). These treatment notes are in stark contrast to Dr. Solloway's opinion that Plaintiff's "speech [was] discursive and at times her associations [were] tangential and so it [was] difficult to follow." Tr. at 522. Finally, as stated earlier, the ALJ was free to discount Dr. Solloway's opinion that Plaintiff was "totally and permanently disabled for any type of gainful employment." See 20 C.F.R. § 404.1527(d)(1).

In sum, the Court finds that the ALJ's evaluation of Dr. Solloway's opinions was based on substantial evidence, as he described "with some measure of clarity the grounds for his decision." Winschel, 631 F.3d at 1179-80. Plaintiff fails to cite to any medical evidence or Social Security regulation that would require remanding this case for further evaluation of Dr. Solloway's opinion.

### 3. Nurse Practitioner Cindy Dunlop A.R.N.P.

Plaintiff also challenges the ALJ's evaluation of the opinions of Nurse Practitioner Dunlop, who treated Plaintiff throughout 2010 and 2011 for her mental impairments. See Tr. at 392-96, 416-17. Nurse Practitioner Dunlop's treatment notes reveal that Plaintiff was taking several prescription medications for her depression and anxiety symptoms, but Plaintiff was also non-suicidal, non-psychotic, and relatively stable from a functional standpoint. Tr. at 392 (noting that Plaintiff's mood, affect, sleep, and appetite were "stable"), 393 (noting that Plaintiff "feels fairly stable"), 395 (noting normal speech and pleasant and cooperative behavior), 417 (noting that Plaintiff's mood, affect, sleep, and appetite were "stable"). On August 29, 2011, Nurse Practitioner Dunlop completed a Mental RFC Questionnaire, in which she found that Plaintiff suffered from

---

[3] It is not entirely clear whether "good" or "fair" was checked. See Tr. at 508.

extreme functional restrictions. Tr. at 448-51. Specifically, when asked to rate Plaintiff's ability to perform various work-related activities on a day-to-day basis, Nurse Practitioner Dunlop found that Plaintiff was entirely unable to perform any of the twenty-five categories of work tasks. Tr. at 449-50.

In his Decision, the ALJ evaluated Nurse Practitioner Dunlop's opinions but ultimately afforded them "little weight" for several reasons. Tr. at 20-21. First, the ALJ correctly stated that Nurse Practitioner Dunlop was not an acceptable medical source as defined by the Social Security regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Second, the ALJ noted that Nurse Practitioner Dunlop's Mental RFC Questionnaire was "grossly inconsistent" with the same questionnaire filled out by Plaintiff's treating mental health counselor, Andrew Galarneau, M.A., R.M.H.C.I. Tr. at 20. Indeed, whereas Nurse Practitioner Dunlop found that Plaintiff was completely unable to perform all twenty-five categories of work-related tasks due to her mental impairments, Mr. Galarneau opined that Plaintiff had only mild to moderate limitations in twenty-two of the twenty-five categories of functioning. Compare Tr. at 441-43, with Tr. at 449-50. Finally, the ALJ found that Nurse Practitioner Dunlop's "extreme limitations" were "not supported by the overall medical evidence of record," including Nurse Practitioner Dunlop's own treatment notes. Tr. at 20. Specifically, the ALJ noted that Plaintiff "was doing better, her mental status examination was within normal limits, it was found that her schizophrenia was stable, and she was assessed with high GAF scores of 65," which demonstrated "only some mild symptoms or some difficulty in social, occupational, or school functioning…." Tr. at 20-21.

- 11 -

After reviewing the medical record, the Court finds that the ALJ's evaluation of Nurse Practitioner Dunlop's opinions was based on substantial evidence. As correctly stated by the ALJ in his Decision, the objective medical record was "not consistent with the extreme limitations given by Ms. Dunlop." Tr. at 21. There is no indication from Nurse Practitioner Dunlop's relatively succinct treatment notes that Plaintiff suffered from mental impairments that would cause the extreme functional limitations described in her August 29, 2011 Mental RFC Questionnaire. To the contrary, Nurse Practitioner Dunlop's treatment notes showed that Plaintiff was relatively stable in spite of her mental impairments. The Court also notes that Nurse Practitioner Dunlop did not provide any references to the medical record to support her extreme functional limitations. Tr. at 447-51. While Plaintiff argues generally that Nurse Practitioner Dunlop's opinions "supported a finding that she could not sustain work on a regular and competitive basis," Plaintiff fails to point to any objective findings that would corroborate Nurse Practitioner Dunlop's relatively unique and conclusory Mental RFC Questionnaire. See Pl.'s Mem. at 9-10.

### 4.     Andrew Galarneau, M.A., R.M.H.C.I.

Finally, Plaintiff challenges the ALJ's evaluation of Mr. Galarneau's opinions on record. Mr. Galarneau began counseling Plaintiff at Sutton Place Behavioral Health in August of 2011. See Tr. at 453-78. During this time, Mr. Galarneau found that Plaintiff suffered from depression, panic attacks, anxiety, and schizoaffective disorder, but also noted that Plaintiff retained relatively normal day-to-day functionality. Tr. at 453-65. Specifically, Mr. Galarneau noted that Plaintiff was capable of independent living, was able to make decisions on her own, and was able to provide transportation for herself.

Tr. at 461.  Mr. Galarneau also checked boxes indicating that Plaintiff's strengths included her insight/judgment and her intelligence.  Tr. at 461.  Further, Mr. Galarneau noted that Plaintiff had good social presentation, normal affect, and normal speech.  Tr. at 462-63.  On August 25, 2011, Mr. Galarneau completed a Mental RFC Questionnaire, in which he opined that Plaintiff suffered from mostly mild to moderate functional limitations as a result of her symptoms.  Tr. at 441-44.  In support of his findings, Mr. Galarneau noted that Plaintiff had a history of schizoaffective disorder that caused various behavioral issues.  Tr. at 444.

In his Decision, the ALJ considered and discussed Mr. Galarneau's opinions, but ultimately afforded them "little weight."  Tr. at 21.  While the bulk of Mr. Galarneau's findings were consistent with the ALJ's RFC assessment, the ALJ appeared to take issue with Mr. Galarneau's opinion that Plaintiff would be distracted from job activity at least twenty percent of the workday or workweek.  Tr. at 18.  In this regard, the ALJ stated:

> The undersigned accords little weight to Mr. Galarneau's Medical Source Statement because he is not an acceptable, medical source, when he submitted this form on August 25, 2011[. H]e indicated that he had only seen [Plaintiff] since August 11, 2011, a short period of time to adequately assess her limitations. Furthermore, his reasons for why [Plaintiff] would have difficulty working at a regular job on a sustained basis noting that she had visual and auditory hallucinations from one to three times a week are inconsistent with [Plaintiff's] reports to the consultative examiner in June of 2011, stating at this time that her schizophrenia was better, she no longer saw any unknown people, and she did not hear any voices anymore (Exhibit 13F/2).

Tr. at 21.

After reviewing the medical record, the Court finds that the ALJ's assessment of Mr. Galarneau's opinions was based on substantial evidence on record.  While Mr.

Galarneau was not an acceptable medical source and therefore could not issue "medical opinions" as defined by the Social Security regulations, the ALJ did not reject his opinions on this basis alone. See 20 C.F.R. §§ 404.1513(a), 404.1527(a). Instead, the ALJ noted that Mr. Galarneau's opinions were inconsistent with contrary reports that Plaintiff's hallucinations were relatively under control during the period at issue. See Tr. at 424 (noting that Plaintiff reported no longer seeing unknown people or hearing voices anymore), 425 (noting "[n]o signs of mental disorders"), 470 (noting that hallucinations were not present), 508 (noting that hallucinations were not present), 512 (noting that hallucinations were not present). Further, Mr. Galarneau's findings that Plaintiff would be distracted from work for at least twenty percent of the workday or workweek was not supported by the objective record, including Mr. Galarneau's own progress notes. Overall, Plaintiff fails to direct the Court to any objective evidence on record that would require remand for further consideration of these opinions.

Since the ALJ's evaluation of the medical evidence was based on substantial evidence, the Court finds that Plaintiff's first and second arguments are without merit.

### B.  The ALJ's RFC Assessment

Next, Plaintiff argues that the ALJ failed to properly include in his RFC assessment all of Plaintiff's functional limitations. See Pl.'s Mem. at 18-21. Specifically, Plaintiff contends that the ALJ failed to incorporate any specific limitation related to Plaintiff's difficulties with concentration. See id. In his Decision, the ALJ found that Plaintiff suffered from moderate difficulties in maintaining concentration, persistence, or pace. Tr. at 13. The ALJ noted that "the record indicates that [Plaintiff] does not need any reminders for appointments, she is able to pay attention for 10 minutes, and she

can follow simple instructions and she is able to react and adapt appropriately to a work environment (Exhibits 9F/13. 8F/3)."  Tr. at 13.  Plaintiff asserts that the ALJ erred by failing to include in his RFC assessment or hypothetical question to the VE "his finding that [Plaintiff] can only pay attention for 10 minutes."  Pl.'s Mem. at 19.  However, there is no indication that the ALJ had restricted Plaintiff's ability to concentrate to a <u>maximum</u> of ten minutes by stating that Plaintiff was "able to pay attention for 10 minutes…."  Tr. at 13.  A more reasonable reading of the ALJ's analysis is that since Plaintiff was able to concentrate for a <u>minimum</u> of ten minutes, she did not suffer from more severe difficulties in concentration, persistence, or pace.  Indeed, Theodore Weber, Psy.D., opined that Plaintiff was "[o]verall, capable of completing simple tasks on a regular basis from a mental standpoint," which is consistent with the ALJ's RFC of performing low-stress, non-production, simple tasks while avoiding contact with the public and co-workers.  <u>Compare</u> Tr. at 15, <u>with</u> Tr. at 400.  While Plaintiff argues that the ALJ "ignored Dr. Weber's opinions that [she] 'would have difficulties with maintaining attention and concentration for extended periods,'" Pl.'s Mem. at 20, a review of the Decision reveals that the ALJ's RFC assessment was, in fact, consistent with Dr. Weber's opinions.  Specifically, Dr. Weber opined that Plaintiff's moderate difficulties in concentration would not preclude her from completing "simple tasks/work procedures" and making "work decisions."  Tr. at 400; <u>cf.</u> <u>Winschel</u>, 631 F.3d at 1180 (holding that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, courts have concluded that limiting the hypothetical question to include only unskilled work sufficiently accounts for such limitations").  Further, even though Plaintiff indicated in a

March 7, 2011 Function Report that she can pay attention for ten minutes, the ALJ properly discounted Plaintiff's subjective statements, and Plaintiff does not contest the ALJ's credibility finding.[4]

In sum, the Court finds that the ALJ properly incorporated Plaintiff's moderate limitations in maintaining concentration, persistence, or pace into his RFC assessment. Plaintiff fails to direct the Court to any objective medical evidence on record that would compel a more restrictive RFC in this case. Thus, Plaintiff's third argument is without merit.

### C. The ALJ's Consideration of the Side Effects of Plaintiff's Medications

Finally, Plaintiff argues that the ALJ failed to properly assess the functional impact of the side effects of Plaintiff's medications. Specifically, Plaintiff contends that "nowhere did [the ALJ] make a specific finding as to the credibility of her testimony that the side effects of her Abilify and Citalopram were so severe as to cause her to sleep at such a frequency that the ability to perform work on an 8 hour a day, 5 day a week basis would be impossible." Pl.'s Mem. at 22 (footnote omitted). While the ALJ did not explicitly discount every subjective statement made by Plaintiff, he did discuss Plaintiff's credibility more generally, and the Court has already determined supra that his credibility finding was based on substantial evidence. With regard to Plaintiff's claim that she would essentially be required to sleep throughout the entire day as a result of her medications, the Court finds that there is not sufficient support for this contention in the record. By her own statements in a March 7, 2011 Function Report, Plaintiff only reported waking up two to three times per night and having "scary nightmares" as a result of her conditions, but

---

[4] Nevertheless, the undersigned found above that the ALJ's credibility finding was supported by substantial evidence.

- 16 -

Plaintiff never mentioned any other problems regarding sleep frequency. Tr. at 198. To the contrary, in an April 3, 2011 Function Report, Plaintiff's sister reported that Plaintiff suffered from "insomnia at times" and that "[w]hen [Plaintiff is] not on [the] righ[t] medication, [Plaintiff] will go for days [without] sleeping." Tr. at 220. At other points in the record, Plaintiff's treating sources indicated that Plaintiff's sleeping was "good." Tr. at 469, 511. While the ALJ discussed Plaintiff's sleep disturbances as documented throughout the record, he ultimately concluded that Plaintiff's non-exertional symptoms did not prevent her from working to the degree alleged by Plaintiff. Finally, despite claiming that her medications also caused dry-mouth and weight gain, Plaintiff fails to describe how either of these side effects would preclude her from working. McCruter, 791 F.2d at 1547 ("The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

After reviewing the record, the Court finds that the ALJ's evaluation of the side effects of Plaintiff's medications was based on substantial evidence, as there is little evidence that Plaintiff's medications would cause any limitations beyond those already incorporated into the ALJ's RFC assessment. Plaintiff fails to direct the Court to any objective evidence that would compel a contrary finding in this regard. Thus, Plaintiff's fourth argument is without merit.

### V. Conclusion

Upon consideration of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on January 6, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

Copies furnished to:

    Counsel of Record
    Any Unrepresented Parties